

**Garrett Charity, 285447**
**4250 North Drinkwater Blvd, Suite 320**
**Scottsdale, AZ 85251**
**602-456-8900**
**garrett.charity@mccarthylawyer.com**
**Attorneys for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pamela Chotiswatdi, | Case No. 2:21-cv-2962 |
| Plaintiff, | |
| v. | **COMPLAINT AND TRIAL BY JURY DEMAND** |
| Financial Recovery Services, Inc., and LVNV Funding, LLC | |
| Defendants. | |

### NATURE OF ACTION

1.    Plaintiff Pamela Chotiswatdi brings this action against Defendant Financial Recovery Services, Inc. ("FRS") and Defendant LVNV Funding, LLC ("LVNV"), pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

### JURISDICTION, STANDING, AND VENUE

2.    This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.    Plaintiff has Article III standing to bring this action, as it seeks to redress conduct by Defendants that caused Plaintiff to suffer intangible harms,

1

which Congress has made legally cognizable in passing the FDCPA. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," and thus "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992)); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) ("Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" (quoting 15 U.S.C. § 1692(b)).

4.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff reside in this district, and where FRS transacts business in this district.

## THE FAIR DEBT COLLECTION PRACTICES ACT

5.      Congress enacted the FDCPA in order to eliminate "abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1179-80 (9th Cir. 2006) (citing 15 U.S.C. § 1692(e)).

6.    To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

7.    Strict liability enhances "the remedial nature of the statute," and courts are "to interpret it liberally" to protect consumers.  *Clark*, 460 F.3d at 1176.

8.    In addition, by making available to prevailing consumers both statutory damages and attorneys' fees, Congress "clearly intended that private enforcement actions would be the primary enforcement tool of the Act."  *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982); *see also Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014).

9.    Violations of the FDCPA are assessed under the least sophisticated consumer standard which is "'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly when those individuals are targeted by debt collectors."  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (quoting *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000)).

10.    "An FDCPA Plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* 'least sophisticated debtor' likely would be misled." *Tourgeman*, 755 F.3d at 1117-18 (emphasis in original).

11.    "[B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards

abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk." *Clark*, 460 F.3d at 1171-72; *see also FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 393 (1965) ("[I]t does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.") (internal quotations omitted).

## PARTIES

12.     Plaintiff is a natural person who at all relevant times resided in the State of California, County of Los Angeles, and City of Long Beach.

13.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

14.     FRS is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

15.     FRS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

16.     LVNV is an entity who acquires debt in default merely for collection purposes, and who at all relevant times was engaged, by use of the mails and telephone, in the business of directly or indirectly attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

17.     LVNV is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

18.     Plaintiff is a natural person allegedly obligated to pay a debt.

19.     Plaintiff's alleged obligation arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a personal credit account originally with Credit One Bank, with account number ending in 3706 (the "Debt").

20.     FRS uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

21.     FRS regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

22.     LVNV uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

23.     LVNV purchases or otherwise acquires defaulted debts from creditors, which it then, either directly or through third parties, seeks to collect from the consumer for its own profit.

24.     The principal purpose of LVNV's business is debt collection.

25.     LVNV has no other substantial business purpose except to purchase or otherwise acquire debt and profit from collected debts.

26.     LVNV acquired Plaintiff's Debt after it was alleged to be in default.

27.     At all relevant times, FRS acted on behalf of LVNV to collect or attempt to collect the Debt from Plaintiff.

28.     Plaintiff retained counsel to represent her with respect to the Debt in or about November 2019.

29.     On or about May 15, 2020, Plaintiff's counsel sent FRS written correspondence and a power of attorney, which notified FRS that Plaintiff was represented by counsel with respect to the Debt.

30.     Therefore, FRS had knowledge that Plaintiff was represented by counsel with respect to the Debt at least as of May 15, 2020.

31.     Subsequent communications took place between FRS and Plaintiff's counsel where the Debt and its potential settlement was discussed.

32.     In or about August 2020, Plaintiff's counsel and FRS reached a settlement agreement with respect to Plaintiff's Debt.

33.     Plaintiff's counsel called FRS on or about August 26, 2020 to set up ACH payments to be made from an escrow account to FRS.

34.     Despite ample notice that Plaintiff was represented by counsel with respect to the Debt, FRS subsequently communicated directly with Plaintiff in connection with the collection of the Debt.

35.     Specifically, in connection with the collection of the Debt, FRS, itself and on behalf of LVNV, sent Plaintiff a letter dated September 1, 2020.

36.     Among other things, the letter represented that the total balance of the Debt was still owed, and did not mention that a settlement agreement for less was in place.

37.     The letter misled Plaintiff to believe that she owed more than had been agreed to by her counsel, and that Defendants would continue collection efforts against her directly, even though she was represented.

6

38.     As more settlement payments were made from the escrow account to FRS, FRS continued to mail letters directly to Plaintiff.

39.     Some of FRS's letters stated to Plaintiff that "your post-dated check . . . will be deposited," on a certain date.

40.     However, Plaintiff never provided Defendants with any post-dated checks (nor did Plaintiff's counsel).

41.     Therefore, these letters also misled Plaintiff that FRS may be taking funds from her personal bank account.

42.     Defendants did not have the prior consent of Plaintiff to communicate directly with Plaintiff.

43.     At no time did Plaintiff's counsel provide Defendants with consent to communicate directly with Plaintiff.

44.     Upon information and belief, Defendants did not have the express permission of a court of competent jurisdiction to communicate directly with Plaintiff regarding the Debt.

45.     Plaintiff received Defendants' letters, which caused Plaintiff undue distress, worry and anxiety.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692c(a)(2)

46.     Plaintiff repeats and re-alleges each factual allegation above.

47.     FRS violated 15 U.S.C. § 1692c(a)(2) by communicating with Plaintiff directly in connection with the collection of a debt, with knowledge that Plaintiff was represented by counsel with respect to the Debt.

48.     LVNV, by virtue of its status as a "debt collector" under the FDCPA, is liable for the conduct of FRS—the debt collector it retained to collect on its behalf.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)  Adjudging that Defendants violated 15 U.S.C. § 1692c(a)(2);

b)  Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00, against each Defendant;

c)  Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)  Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e)  Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

f)  Awarding such other and further relief as the Court may deem proper.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1692e

49.     Plaintiff repeats and re-alleges each factual allegation above.

50.     The FDCPA creates a broad, flexible prohibition against the use of misleading, deceptive, or false representations in the collection of debts. *See* 15 U.S.C. § 1692e; *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385,

392 (5th Cir. 2002) (citing legislative history reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed").

51.     "[I]t is well established that '[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) (quoting *Brown v. Card Serv. Ctr.,* 464 F.3d 450, 455 (3d Cir. 2006)).

52.     Included as an example of conduct that violates section 1692e is the false representation of the character, amount, or legal status of a debt.  15 U.S.C. § 1692e(2)(A).

53.     Thus, the plain-language of the FDCPA makes it clear that under the strict liability framework, any false representation as to the amount of the debt is sufficient to show a violation of the FDCPA.  *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period."); *see also Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("under § 1692e ignorance is no excuse").

54.     Congress, recognizing that it would be impossible to foresee every type of deceptive collection misbehavior, expressly included in the FDCPA a catchall provision, prohibiting "[t]he use of any false representation or deceptive

means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

55.    The FDCPA is intended to be "comprehensive, in order to limit the opportunities for debt collectors to evade the under-lying legislative intention," and therefore the same conduct may violate multiple sections of the Act.    *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006) (citing FTC Official Staff Commentary on FDCPA, 53 Fed. Reg. 50097, 50101).

56.    FRS violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of Plaintiff's Debt, including by misleading Plaintiff in its letters sent directly to Plaintiff.

57.    LVNV, by virtue of its status as a "debt collector" under the FDCPA, is liable for the conduct of FRS—the debt collector it retained to collect on its behalf.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)    Adjudging that Defendants violated 15 U.S.C. § 1692e;

b)    Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00, against each Defendant;

c)    Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)    Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e)    Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

58.     Plaintiff is entitled to and hereby demands a trial by jury.

Dated: April 6, 2021.

Respectfully submitted,

_____

McCarthy Law, PLC
4250 N. Drinkwater Blvd. Ste. 320
Scottsdale, AZ 85251
Telephone: (602) 456-8900
Facsimile: (602) 218-4447
litigation@mccarthylawyer.com
Attorney for Plaintiff